IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


KATHLEEN C. BRISCO                                               PLAINTIFF

         v.                          Civil No. 04-3078

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff Kathleen brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration (Commissioner) denying

her claims for period of disability and disability insurance benefits (DIB) pursuant to §§ 216(i)

and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and

423.  In this judicial review, the court must determine whether there is substantial evidence in

the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## Procedural and Factual Background

The plaintiff filed her application for DIB on March 30, 2000, alleging an onset date of

November 4, 1999.  (Tr. 149.)  The application was initially denied (Tr. 123-124) and that denial

was upheld upon reconsideration (Tr. 125-126).  Plaintiff then made a request for a hearing by

an Administrative Law Judge (ALJ).  (Tr. 135.)

On October 31, 2001 a hearing was held by the ALJ.  The plaintiff was represented by

counsel at this hearing.  (Tr. 43-72.)  The ALJ issued an unfavorable ruling on January 1, 2002,

deciding that the plaintiff was not disabled within the meaning of the Act.  (Tr. 73-81.)  The

plaintiff then requested a review of the hearing by the Appeals Council (Tr. 87), which granted

that request and remanded the case to the ALJ for further consideration of plaintiff's subjective complaints of pain and evaluation of plaintiff's witness at the hearing. (Tr. 91-93.)

After a supplemental hearing held September 17, 2002 (Tr. 35-42), a second ALJ issued an unfavorable ruling on December 17, 2002, deciding that plaintiff was not disabled within the meaning of the Act. (Tr. 15-27.) The plaintiff then requested another review by the Appeals Council (Tr. 10-14), which denied that request on September 24, 2004; thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed her complaint with this court on November 3, 2004, seeking judicial review of that decision. (Doc. 1.) Both parties have filed appeal briefs with the court. (Docs. 14, 15.) This case is before the undersigned pursuant to the consent of the parties. (Doc. 4.)

At the time of the initial hearing in October 2001, plaintiff was 51 years of age. (Tr. 48.) She had completed high school and one year of college. (Tr. 49, 163.) Her work history included assembly line work in a poultry processing plant from February 1994 until February 2000. (Tr. 50.) In that capacity, she performed tasks such as a claw inspector, wing cutter, and a deboner. (Tr. 50.) For approximately two months in 1990, she worked as a sewing machine operator in a garment factory. From 1984 to 1988, plaintiff was a part-time library aide clerk. (Tr. 50-51.) She contends that she is unable to work due to blood pressure problems and pain in her shoulder, hand, hip, and eye. (Tr. 51.)

Plaintiff testified that she attends cardiac rehabilitation twice a week and had been doing so for the two years preceding the hearing. At the rehabilitation, plaintiff walks on an inclined treadmill for 38 minutes at 2 miles per hour and rides a bicycle for 21 minutes. She also does weight training with one pound weights. Three or four times, plaintiff has not been permitted

to participate in the cardiac rehabilitation because her blood pressure was either too high or too low. (Tr. 52-53.)

Plaintiff testified that she had difficulties with her hands and that her right hand will cramp and "lock" on her. She has had three surgeries on her right hand--"for trigger finger on her middle finger," for a ganglion cyst on the little finger, and for a broken wrist and carpal tunnel syndrome on her wrist. Plaintiff testified that she is unable to grasp jars and open them, and it is difficult for her to carry stuff. She is unable to remove a gallon of milk from the refrigerator with her right hand. She also testified that she had difficulty driving due to the pain in her hands. (Tr. 53-61.) Plaintiff testified that she is able to lift and carry between five and ten pounds, but that it hurts to do so. (Tr. 62.) Plaintiff's daughter testified that she has to help her mother with the housecleaning, specifically tasks that require a lot of bending down and stretching up. (Tr. 63-65.)

At the supplemental hearing in September 2002, plaintiff testified that she was "quite a bit worse" than she had been in October 2001, and that her condition worsened gradually. (Tr. 38.) She claims that the numbness in her hands had gotten worse and had begun affecting her left arm. She claims that the numbness begins in her shoulder and goes down through her hands. Plaintiff testified that she has numbness in her right hand 20 out of 24 hours of the day, and she is unable to lift her five month old granddaughter. (Tr. 40-41.) Plaintiff's husband testified that he has observed his wife having difficulties with opening canned goods and handling pots and pans. He said that she complains about her hands going to sleep, and that she does not handle stress and deadlines well because of her blood pressure. (Tr. 38-40.)

AO72A
(Rev. 8/82)

Upon reviewing the evidence, the ALJ found that plaintiff's hypertension is a "severe" condition, as defined by the Regulations, but is not severe enough to meet or equal any of the listed impairments described in the "Listing of Impairments." (Tr. 20.) The ALJ also found that plaintiff's complaints of right hip and shoulder pain were not severe in light of the medical evidence and plaintiff's daily activities. (Tr. 20.) Also, the ALJ determined the plaintiff's complaints of eye problems caused by a chemical burn were not severe because she returned to work in 1995 after treatment and sought no further treatment for the eye. (Tr. 21.)

As relevant to the grounds on appeal, the ALJ found that despite plaintiff's claims that carpal tunnel syndrome (CTS) inhibits her ability to use her right hand for frequent or repetitive movements or pinching, grasping, or being able to cut with scissors, the medical evidence submitted showed that plaintiff returned to work after her carpal tunnel surgery in 1997 and continued to work until 1999 when she quit due to complaints of hypertension. Also, the ALJ noted that plaintiff reported participating in daily activities such as household chores, washing the car, using a checkbook, and driving unfamiliar routes that contradict her claim that the CTS is a disabling condition. The ALJ further noted that no EMG studies have been submitted that confirm a recurrence of the CTS. Therefore, the ALJ found that plaintiff's CTS was a non-severe condition. (Tr. 21.)

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at a medium level, including occasional lifting of 50 pounds or frequent lifting of 25 pounds along with considerable walking, standing, and sitting during the 8-hour workday. With that RFC, the ALJ determined that plaintiff could return to her past relevant work as a poultry

AO72A
(Rev. 8/82)

eviscerator/deboner or as a sewing machine operator, as those positions are performed at the light

level of exertion and are unskilled in nature. (Tr. 26-27.)

On appeal, the plaintiff contends that the ALJ erred in finding that her only severe

impairment was her hypertension disorder. The plaintiff argues that her CTS should have also

been considered severe because after the CTS surgery her physician placed her on permanent

restrictions of no repetitive grasping, pinching, or wrist movements. The plaintiff also contends

that the ALJ should have given greater weight to the opinions of plaintiff's treating physician

concerning plaintiff's physical limitations. Plaintiff argues that the ALJ's determination that she

could return to her past relevant work was improper because that work requires constant reaching

and handling along with repetitive grasping, pinching, and wrist movements, which the ALJ

failed to recognize in his opinion. Further, plaintiff contends that the state agency medical

consultants who provided RFC assessments at the initial and reconsideration levels did not have

the benefit of reviewing the evidence concerning plaintiff's shoulder, hip, and wrist pain. Thus,

plaintiff claims that the ALJ should have sought an independent physical examination. (Doc.

14.)

## Applicable Law

This court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

-5-

Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only

AO72A
(Rev. 8/82)

if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## Discussion

The plaintiff contends that the ALJ erred in finding only her hypertension to be a severe impairment. The regulations define a "non-severe impairment(s)" as "[a]n impairment or combination of impairments [that] . . . does not significantly limit your physical or mental ability to do basic work activities."

Plaintiff had a CTS release in September 1997, following an on-the-job injury to her right wrist. (Tr. 344, 349.) Plaintiff points out that in March 1998, Dr. Vowell, who treated plaintiff's CTS stated that he was going to place plaintiff "at a job with permanent restrictions of no repetitive grasping, pinching or wrist movements because of her previous wrist fracture and CTS." (Tr. 343.) However, in July 1998, Dr. Vowell stated he was going "to return her back to her regular job duties," noting that she had a 16% impairment loss of physical function in her upper extremities. (Tr. 342.) This release to regular duties was done after plaintiff had two follow-up Nerve Conduction Velocity tests on her CTS which revealed possible recurrence of the CTS. Notably, the plaintiff here worked in the position of a poultry eviscerator/deboner for two years after the CTS surgery, and there is no medical evidence to support her claim that the CTS injury worsened or was the reason for her decision to quit her job. *See Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) (fact that claimant worked with his impairments over a period of years without any worsening of his condition means that he cannot claim them as disabling).

AO72A
(Rev. 8/82)

Therefore, the ALJ properly determined that plaintiff's CTS was a non-severe impairment as that condition did not significantly limit her abilities to perform work activity.

Another physical condition that plaintiff contends is a severe condition is pain in her right hip. Plaintiff initially sought treatment for her right hip pain in December 1999 with Dr. Nash. X-rays were taken which Dr. Nash "noted to be normal." Dr. Nash noted that plaintiff had the pain for the previous three and a half years. Dr. Nash treated plaintiff with a shot of Dexamethasone and DepoMedrol. (Tr. 291.) In February 2000, plaintiff changed to Dr. Malone, who noted on this first visit that plaintiff requested a Cortisone shot. Dr. Malone did give plaintiff a shot of Depo-Medrol and noted that he needed to see her again in four weeks to evaluate her pain. (Tr. 290.) The record does not contain any evidence that plaintiff complained about her hip again until September 2002. (Tr. 109.) Despite complaints of right hip pain, plaintiff testified that she was able to walk on an inclined treadmill for 38 minutes at 2 miles per hour and ride a bicycle for 21 minutes during her cardiac rehabilitation. Thus, the ALJ did not err in finding her complaints of right hip pain to be non-severe.

Plaintiff also complained about pain in her right shoulder to Dr. Nash in June 1999, which plaintiff reported happened after a fall. Dr. Nash noted that plaintiff had good range of motion in the right shoulder, but did have some "mild tenderness" around her right shoulder near the bursa. Dr. Nash diagnosed bursitis of the right shoulder and prescribed Naprosysn for the condition. (Tr. 293-294.) In August 2000, plaintiff complained about the right shoulder pain to Dr. Malone, who upon examination found that she had "no pops, clicks or deformity of that shoulder." He prescribed Celebrex for the condition. (Tr. 287.) Later, Dr. Malone prescribed Arthrotec for the right shoulder pain, which plaintiff claimed "well controlled" her arthritis. (Tr.

-8-

114.) In July 2002, when plaintiff complained that the Arthrotec was no longer working, Dr. Malone increased the dosage and later changed plaintiff to Ultracet. (Tr. 109-110.) At no point does any doctor recommend any form of surgical intervention for the shoulder pain, and plaintiff only complained about the pain not being controlled by the medications well past her November 1999 onset date. Therefore, the ALJ did not err in finding her shoulder pain to be a non-severe condition.

The plaintiff also states that the ALJ erred in failing to fully consider and credit her treating physician's opinions concerning her residual functional capacities. According to the RFC completed by Dr. Malone, he found that the plaintiff was incapable of even a "low stress" job because of her hypertension and coronary disease, that plaintiff could walk only 1-2 city blocks without rest or severe pain, could sit or stand only one hour continuously, could sit or stand less than 2 hours total in an 8-hour work day, and could never lift or carry less than 10 pounds. Also, Dr. Malone opined that plaintiff could not do any grasping, turning, or twisting of objects with her right or left hands, do fine manipulations with her right or left fingers, or do any reaching with her right or left arms. Dr. Malone stated that plaintiff would be absent more than four times a month due to impairments and treatments. (Tr. 305-307.)

The ALJ discredited Dr. Malone's findings on the basis that the strict RFC determinations "are in stark contrast to his own treatment records of te claimant." The ALJ points out several inconsistencies between the RFC responses and the treatment records, such as the reported pain level in the right shoulder, the failure of Dr. Malone to prescribe a sleep aid, the failure of Dr. Malone in the treatment records to place any limits on plaintiff's activities, the lack of evidence that the CTS occurred in the left wrist, and Dr. Malone's findings that plaintiff's hypertension was

-9-

well controlled by medication and her coronary artery disease was "mild." (Tr. 24-25.) In light of these obvious inconsistencies, the ALJ did not give controlling weight to Dr. Malone's RFC findings. A treating physician's opinions must be considered along with the evidence as a whole, and when a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight. *See Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996.)

The plaintiff also contends that the ALJ erred in failing to order an independent physical examination when the ALJ disagreed with the treating physician's findings. "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994). Here, the ALJ did rely on the opinions of two reviewing physicians who found that plaintiff could maintain work at the medium level. While these physicians may did not have the evidence of the CTS records before them when they made these conclusions, the ALJ did not rely upon their opinions alone. He also evaluated the medical evidence from Dr. Vowell who treated the plaintiff's CTS, along with the records from Dr. Nash and Dr. Malone. "It [is] the ALJ's responsibility to determined [a plaintiff's] RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the plaintiff's] own description of her limitations." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995.)

-10-

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed and plaintiff's complaint should be dismissed with prejudice.

DATED this 5th day of July 2006.

**/s/ Beverly Stites Jones**
_____
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)